## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN GRANZYK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-04370 |
| | ) | |
| CENTENE MANAGEMENT COMPANY, LLC, | ) | Judge |
| a Delaware Corporation; ACARIAHEALTH, Inc. | ) | |
| a Delaware Corporation, | ) | Magistrate |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### VERIFIED EMERGENCY COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, STEPHEN GRANZYK, by and through his attorneys, Griffin Williams McMahon & Walsh, LLP, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, and for his Verified Emergency Complaint for Declaratory Judgment against Defendants CENTENE MANAGEMENT COMPANY, LLC, and ACARIAHEALTH, Inc. states as follows:

### NATURE OF THE ACTION

1.     This is an action for declaratory judgment to redress wrongful, anti-competitive and bullying behavior by Centene Management Company, LLC ("Centene") and AcariaHealth, Inc. ("AcariaHealth" or collectively "Centene") against Stephen Granzyk ("Mr. Granzyk"), its former Vice President, Pharma Relations and Business Strategy, and Mr. Granzyk's new employer, Seven Bridges Specialty, LLC ("Seven Bridges").

2.     Centene is a large health insurer that insures approximately 26 million mainly Medicare and Medicaid members. In April 2013, Centene acquired AcariaHealth. AcariaHealth

is a traditional specialty pharmacy that provides prescription medications to patients in the traditional "closed door" specialty pharmacy space.

3.      In September 2013, AcariaHealth and thereby Centene recruited Mr. Granzyk to join its business development team due to his proven track record of business development and extensive network of contacts within the specialty pharmacy industry.

4.      Mr. Granzyk worked remotely from St. Charles, Illinois throughout his nearly eleven-year career with Centene. On June 20, 2024, he resigned from his position with Centene. On January 1, 2025, he was appointed President and CEO of Seven Bridges.

5.      On March 25, 2025, and continuing through the date of filing, Centene launched a campaign of harassment, threats and bullying communications directed at Mr. Granzyk and Seven Bridges with the goal of intimidating and preventing him from engaging in lawful and fair competition against Centene.

6.      For example, Centene has threatened to file suit against Mr. Granzyk with immediacy if he does not, by way of example, discontinue working for Seven Bridges immediately and for an indefinite period and refrain from attending an upcoming ASEMBIA Pharmaceutical Conference, which is attended by more than 5000 industry companies and vendors and is scheduled for April 27, 2025, through May 1, 2025.

7.      Centene's threats are premised on a purported 2023 noncompete and non-non-solicitation agreement between Mr. Granzyk and Centene. The purported agreement is void as to Mr. Granzyk because it did not: (1) advise him in writing to consult with an attorney before entering into the agreement; or (2) provide him with at least 14 calendar days to review the agreement. The agreement is thus violative of the Illinois Freedom to Work Act and unenforceable against Mr. Granzyk as a matter of law. 820 ILCS 90/20.

8.     Mr. Granzyk seeks a declaratory judgment that (1) Illinois law governs the post-employment relationship between Mr. Granzyk and Centene; (2) the purported 2023 noncompete and non-solicitation agreement is void and unenforceable; and (3) even if the noncompete and non-solicitation agreement is not void, it is otherwise unenforceable against an Illinois resident because it is violative of Illinois public policy, unreasonably broad, and constitutes an unlawful restraint on trade.

## PARTIES

9.     Mr. Granzyk is, and at all times complained of was, a resident and domiciliary of the State of Illinois.

10.     Centene is, and at all times complained of was, a Delaware corporation with headquarters in the State of Missouri.

11.     AcariaHealth is, upon information and belief, and at all times complained of was, a Delaware corporation with headquarters in the State of Florida.

## JURISDICTION AND VENUE

12.     Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332(a)(1).  Plaintiff resides within the jurisdictional boundaries of the United States District Court for the Northern District of Illinois, Centene resides within the State of Missouri, and AcariaHealth resides within the State of Florida.  The amount in controversy exceeds $75,000.00, exclusive of attorney fees and costs.

13.     The purported agreement for which a declaration is sought was negotiated and executed within the State of Illinois by Mr. Granzyk.

14.     The purported agreement for which a declaration is sought was expected to be performed within the State of Illinois.

3

15.     Defendants allege Mr. Granzyk breached the agreement for which the declaration is sought within the State of Illinois and expects to enforce the agreement within the State of Illinois.

16.      Illinois has the most significant contacts with the purported noncompete and non-solicitation agreement and Illinois has a superior interest over courts of other jurisdictions in enforcing agreements over its own citizens.

17.     Venue is appropriate where the Plaintiff is domiciled, the agreement was executed, is expected to be performed and Defendants alleged the purported agreement was breached within the jurisdictional boundaries of the United States District Court for the Northern District of Illinois, Eastern Division.

## STATEMENT OF FACTS

18.     In 2009, AcariaHealth was incorporated.  AcariaHealth is a specialty pharmacy. In April 2013, Centene acquired AcariaHealth.

19.     In September 2013, AcariaHealth recruited Mr. Granzyk to work remotely in St. Charles, Illinois as its Vice President, Pharma Relations and Business Strategy.  Mr. Granzyk worked between 2013 and 2024 from St. Charles, Illinois, was paid in St. Charles, Illinois and had customary Illinois state payroll taxes withheld from his paycheck.

20.     In 2016, the Illinois legislature passed the "Illinois Freedom to Work Act" ("the Act").  820 ILCS 90/1 *et seq*.  The Act became effective January 1, 2017.

21.     Mr. Granzyk was an employee of Centene as defined by the Act and as defined by the Illinois Minimum Wage Law.  Centene was Mr. Granzyk's employer as defined by the Act and as defined by the Illinois Minimum Wage Law.

22.    The Act defines "Covenant not to compete" as: "an agreement between an employer and an employee…that restricts the employee from performing: (1) any work for another employer for a specified period of time; (2) any work in a specified geographical area; or (3) work for another employer that is similar to employee's work for the employee included as a party to the agreement. 820 ILCS 90/5.

23.    The Act defines "Covenant not to solicit" as "an agreement…between an employer and an employee that (1) restricts the employee from soliciting for employment the employer's employees or (2) restricts the employee from soliciting, for the purpose of selling products or services of any kind to, or from interfering with the employer's relationships with, the employer's clients, prospective clients, vendors, prospective vendors, suppliers, prospective suppliers, or other business relationships." 820 ILCS 90/5.

24.    The Act requires that employers ensure employees are informed about their obligations.  For instance, Section 20 of the Act provides, "[a] covenant not to compete or a covenant not to solicit is illegal and void unless (1) the employer advises the employee in writing to consult with an attorney before entering into the covenant and (2) the employer provides the employee with a copy of the covenant at least 14 calendar days before the commencement of the employee's employment or the employer provides the employee with at least 14 calendar days to review the covenant."  820 ILCS 90/20.

25.    In 2023, Mr. Granzyk was notified by Centene that he would receive stock as part of his annual review.  The stock could be accessed through receipt of an email that contained  a link to the Fidelity Investments app. There, Mr. Granzyk entered a username and password and the "Restricted Stock Unit Agreement Granted under 2012 Stock Incentive Plan, As Amended" ("2023 RSU Agreement") appeared.  See Exhibit 1, 2023 RSU Agreement.

26.     The reader could scroll through the electronic document and at the end of the document was a button to "accept" the stock agreement.

27.     Tucked into Section 9 of the 2023 RSU Agreement were the following noncompetition and non-solicitation provisions:

"(i) During Participant's employment with the Company and for the period of six (6) months (or, if longer, the post-termination period specified in any individual severance or employment agreement, as applicable, to which the Participant is a party) immediately after the termination of Participant's employment with the Company (including any parent, subsidiary, affiliate or division of the Company) for any reason whatsoever, and whether voluntary or involuntary, Participant shall not invest in (other than in a publicly traded company with a maximum investment of no more than 1% of outstanding shares), counsel, advise, consult, be employed or otherwise engaged by or with any entity or enterprise ("Competitor") that competes or that intends or plans to compete with (A) any area of business in which the Company or any affiliate of the Company is engaged, and in which the Participant was engaged, participated in or about which the Participant learned Confidential Information during the Participant's last thirty-six (36) months of employment, or (B) any other area of business for which the Company or any affiliate of the Company has taken substantial steps towards becoming engaged, and in which the Participant was engaged, participated in or about which the Participant learned Confidential Information during the Participant's last 36 months of employment. Because the Company and its affiliates engage in business nationwide, the obligations under this Section 9(c)(i) shall apply nationwide (anywhere in the United States). Notwithstanding the foregoing, the Participant shall not violate this provision by providing services to a unit, division, subsidiary or affiliate of a Competitor which otherwise engages in activities competitive with the business activities of the Company if such unit, division, subsidiary or affiliate for which the Participant provides services does not engage in such business activities.

(ii) During the Participant's employment with the Company (or any parent, subsidiary, affiliate or division of the Company) and for the period of twelve months immediately after the termination of the Participant's employment with the Company (or any parent, subsidiary, affiliate or division of the Company) for any cause whatsoever, and whether voluntary or involuntary ("Restricted Period"), the Participant will not, either directly or indirectly, either for himself or for any other person, firm, company or corporation, call upon, solicit, divert, or take away, or attempt to solicit, divert or take away any of the customers, prospective customers, business, vendors or suppliers of the Company that (at any time during the last three years of the Participant's employment) the Participant had dealings with, or responsibility for, or as to which the Participant had access

to the Company's (or any affiliate of the Company's) Confidential Information or such customers', providers', vendors' or suppliers' confidential information.

(iii) The Participant shall not, at any time during the Restricted Period, without the prior written consent of the Company, (i) directly or indirectly, solicit, recruit or employ (whether as an employee, officer, director, agent, consultant or independent contractor) any person who was or is at any time during the previous six months an employee, representative, officer or director of the Company (or any parent, subsidiary, affiliate or division of the Company); or (ii) take any action to encourage or induce any employee, representative, officer or director of the Company (or any parent, subsidiary, affiliate or division of the Company) to cease their relationship with the Company (or any parent, subsidiary, affiliate or division of the Company) for any reason. Notwithstanding the foregoing, the Participant shall not violate this Section 9(c)(iii) by advertising not specifically targeted at any of the Company's employees and serving as a reference upon request." See Exhibit 1 at Section 9(c).

28.     Section 10(a) of the 2023 RSU Agreement provides "Severability: The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, and each other provision of this Agreement shall be severable and enforceable to the extent permitted by law." Exhibit 1 at Section 10(a).

29.     Section 10(e) of the 2023 RSU Agreement provides that it "supersedes all prior agreements and understandings, relating to the RSUs." Exhibit 1 at Section 10(e).

30.     Centene did not advise Mr. Granzyk that he had at least 14 business days to review the 2023 RSU Agreement. The 2023 RSU Agreement does not indicate that the participant has 14 business days to review the agreement.

31.     Mr. Granzyk executed the 2023 RSU Agreement electronically from St. Charles, Illinois.

32.     Centene also did not advise Mr. Granzyk in writing to consult with an attorney before entering into the 2023 RSU Agreement. Accordingly, Mr. Granzyk did not consult with an attorney before entering into the 2023 RSU Agreement.

33.     In 2024, Centene proposed a "Restricted Stock Unit Agreement Granted under 2012 Stock Incentive Plan, As Amended" ("2024 RSU Agreement") to Mr. Granzyk.   See Exhibit 2, 2024 RSU Agreement.

34.     Importantly, the 2024 iteration of the RSU Agreement for the first time included a "State Law Addendum," which tracked the admonishments of Section 20 of the Act.   The State Law Addendum provided, in relevant part:

> "**ILLINOIS. If Participant is a resident of Illinois as of the Effective Date: (1) Participant shall have at least 14 calendar days to review and consider this Agreement from the date Participant received this document; provided, however, Participant is permitted to accept this Award before the expiration of the foregoing 14-day period; and (2) the Company hereby advises Participant to consult with an attorney prior to accepting and entering into the Agreement (however, any such legal consultation shall be at Participant's own expense)." Exhibit 2 at 15.

35.     The addition of the State Law Addendum established two things.   First, Centene understood that the RSU Agreements would be governed by Illinois law when entered into by Illinois residents.   Second, the RSU Agreements had to comply with the mandates of the Illinois Freedom to Work Act.   Mr. Granzyk declined to execute the 2024 RSU Agreement.

36.     On January 1, 2025, Mr. Granzyk accepted a position with Seven Bridges.   Seven Bridges does not hold any pharmacy licenses.   Mr. Granzyk had made efforts to comply with the terms of the RSU Agreement despite its voidness to avoid departing Centene on bad terms.

37.     Even so, on March 28, 2025, Counsel for Centene sent a "Cease and Desist" notice to Mr. Granzyk that demanded he cease doing the following, or face legal action:

a.   Engaging in any business activities with 7 Bridges or any other competing business, until we can fully address your activities and determine an appropriate path forward;

b.   Soliciting, directly or indirectly, or accepting business from, AcariaHealth's customers or vendors;

    c.   Soliciting or attempting to solicit, directly or indirectly, AcariaHealth's employees; and

    d.   Using or disclosing confidential information or trade secrets of AcariaHealth.

    e.   And extend the employee and customer non-solicitation provisions found in the 2023 RSU Agreement for an additional year.

38.    Centene's Cease and Desist also required that Mr. Granzyk provide the following to Counsel for Centene:

    a.   A written statement that you will comply with all provisions of the RSU Agreements going forward;

    b.   A written acknowledgment that you will keep this situation confidential from third parties with the exception of any disclosures to third parties you are requested to make per the terms of this letter or otherwise required under the RSU Agreements;

    c.   Copies of all communications (including electronic or text or similar formats) you have had with 7 (sic) Bridges and/or its ownership group pertaining to the recruitment or hiring of AcariaHealth employees, as well as the solicitation or attempted solicitation of AcariaHealth customers, since January 2024;

    d.   All communications you have had with former AcariaHealth employees now employed by 7 (sic) Bridges, since January 2024;

    e.   A complete list of all AcariaHealth documents, information, or property (in any format) that remain in your possession or control, along with the immediate return of all such materials, including electronic files and copies;

    f.   A detailed account of any AcariaHealth confidential information you have used or disclosed while associated with 7 (sic) Bridges or at any time since your departure from AcariaHealth, including any such disclosures made prior to your resignation; and March 28, 2025;

    g.   A complete list of any current or potential customers of AcariaHealth you have contacted since leaving AcariaHealth, whether of your own volition or on behalf of 7 (sic) Bridges.

    h.   **Repayment of RSU Proceeds.** Due to your breach of the restrictions in your RSU Agreements, you are required to pay a sum to AcariaHealth

equal to all gross proceeds (before tax) of all Centene shares you sold or disposed of in the past three years. That would include, for example, the gross proceeds realized from vested shares sold to cover any tax withholding obligations for the vesting of grants of stock. AcariaHealth and Centene demand immediate payment of these amounts. However, if you and the other former AcariaHealth employees with similar restrictions immediately come into compliance with your respective RSU Agreements and restrictive covenants, and AcariaHealth's other demands in this letter, AcariaHealth and Centene may consider waiving this demand.

i. **Refrain from Trade Show Attendance.** You and any other former AcariaHealth employee now with 7 (sic) Bridges also should not attend any industry trade shows, including the upcoming ASEMBIA conference (as highlighted in 7 Bridges' marketing efforts), as your presence and that of your team would inevitably result in the misuse of AcariaHealth's confidential information, violate your non solicitation obligations, and pose a threat of unfair competition.

39.    Mr. Granzyk attempted to engage in settlement communications following the cease and desist letter, but no progress was made. Centene's demands remain so unreasonable, threatening, and overreaching, that Mr. Granzyk had no choice but to seek an emergency declaratory judgment.

40.    To the extent the 2023 RSU Agreement is not void, it is unreasonable, seeks to stop fair competition, and is against public policy to the extent it:

a.    Is nationwide in geographic scope;

b.    Bars solicitation of prospective customers;

c.    Bars solicitation of customers, vendors or suppliers even if Mr. Granzyk only had potential access to confidential information of the customer, vendor or supplier;

d.    Bars solicitation of customers Mr. Granzyk established relationships with prior to being employed by Centene;

e.    Bars doing business with Centene's vendors;

f.    Employ as an officer or agent without soliciting a former employee;

g. Is otherwise unreasonable and seeks to stop fair competition. See Exhibit 1 at Section 9.

41.     The 2023 RSU Agreement would stop Mr. Granzyk from contacting any person or entity with which he had theoretical access to their confidential information, without regard to whether he serviced that customer or even knew it was a Centene customer, anywhere in the United States, for three years. *Id.*

## COUNT I – DECLARATORY JUDGMENT

42.     Plaintiff repeats, realleges, and incorporates by reference paragraphs one through forty-one as if fully set forth herein.

43.     The 2023 RSU Agreement is void as a matter of law for failure to comply with Section 20 of the Illinois Freedom to Work Act.

44.     The 2023 RSU Agreement is unreasonably broad and an unfair restriction on fair competition. If enforced, it would unfairly inhibit Mr. Granzyk's ability to earn a livelihood and would deprive Seven Bridges Specialty, LLC and the public of Mr. Granzyk's talent.

45.     The 2023 RSU Agreement imposes impermissible restraints on trade and is therefore void as against public policy.

WHEREFORE, Plaintiff Stephen Granzyk respectfully prays that this Honorable Court enter a judgment order containing the following relief:

A.     Declaring that Illinois law governs any disputes related to the 2023 RSU Agreement;

B.     Declaring the noncompetition and non-solicitation provisions in the 2023 RSU Agreement are void for failure to comply with Section 20 the Illinois Freedom to Work Act;

C.     Declaring that Stephen Granzyk's attendance at the 2025 ASEMBIA Conference is not violative of any post-employment covenant with Centene;

D.     Declaring that the noncompetition and non-solicitation provisions in the 2023 RSU Agreement are otherwise unenforceable and against public policy as overly broad and unfair restrictions on fair trade.

E.     And for any other relief the Court deems appropriate.

Respectfully submitted,

GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP


By: /s/ Patrick J. Walsh
      Patrick J. Walsh, Esq.




Patrick J. Walsh, Esq.
GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP
21 N. Fourth Street
Geneva, Illinois 60134
(630) 262-0544
(630) 262-0644 facsimile
pwalsh@gwmwlaw.com


**VERIFICATION**

Plaintiff STEPHEN GRANZYK, being first duly sworn on oath, deposes and states that he is the Plaintiff in the above-captioned matter; that he has read the foregoing document, and the allegations made therein are true, correct and complete to the best of his knowledge and belief.

By: */s/ Stephen Granzyk*
      Stephen Granzyk